661 So.2d 395 (1995)
Wilbur Royce KIRKLAND, Jr., Petitioner/Appellant,
v.
Kenneth W. FORTUNE, Sheriff of Jefferson County. Respondent/Appellee.
No. 95-2853.
District Court of Appeal of Florida, First District.
October 13, 1995.
*396 Brian T. Hayes, Monticello, for Petitioner/Appellant.
Robert A. Butterworth, Attorney General; James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals; Edward C. Hill, Jr., Assistant Attorney General, Tallahassee, for Respondent/Appellee.

ON MOTION FOR REHEARING OR CLARIFICATION
WEBSTER, Judge.
Petitioner, charged by indictment with first-degree murder, sought review by habeas corpus of an order denying his motion for bail. By an unpublished order, we previously granted the petition, and directed the trial court to release petitioner "upon his posting a reasonable bond to be set by the [trial] court." The state has now filed a motion for rehearing or clarification. Although we deny the motion for rehearing, we grant the motion for clarification, and write to explain the legal basis for our previous order.
Article I, section 14, of the Florida Constitution reads:
Pretrial release and detention. 
Unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great, every person charged with a crime or violation of municipal or county ordinance shall be entitled to pretrial release on reasonable conditions. If no conditions of release can reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process, the accused may be detained.
Florida Rule of Criminal Procedure 3.131(a) is to the same effect. This provision has been construed to mean that one charged with a capital offense or an offense punishable by life imprisonment is "entitled to release on reasonable bail as a matter of right" *397 unless "the proof is evident or the presumption great that [the accused] is guilty of the offense charged." State v. Arthur, 390 So.2d 717, 718 (Fla. 1980). Moreover, because the provision "embodies the principle that the presumption of innocence abides in the accused for all purposes while awaiting trial," the burden rests on the state to establish that "the proof of guilt is evident or the presumption is great." Id. at 719-20 (footnote omitted).
The degree of proof which the state must present to carry its burden in such a case has long been held to be a higher one than that of guilt to the exclusion of all reasonable doubt required for a criminal conviction. E.g., State ex rel. Van Eeghen v. Williams, 87 So.2d 45 (Fla. 1956); Russell v. State, 71 Fla. 236, 71 So. 27 (1916). Thus, in Russell, the court said:
The question is not whether the evidence adduced on an application for bail is sufficient to establish guilt beyond a reasonable doubt, but whether the evidence is sufficient to establish that degree of proof where the judge to whom the application is made may say that guilt is evident or the presumption is great, which is a greater degree of proof than that establishing guilt merely to the exclusion of a reasonable doubt.
The word "evident" is defined by Webster as "clear to the understanding and satisfactory to the judgment." Synonyms: "Manifest, plain, clear, obvious, conclusive." The word "manifest" is defined as follows: "To put beyond question of doubt." In a trial this degree of proof is not required, for it not infrequently happens that upon a conviction the court will refuse to grant a new trial because there is evidence to support the verdict, although to his mind guilt may not have been established to the point of being manifest, obvious, beyond a question of doubt, yet it is to the court to whom application for bail is made, and his judgment is invoked as to the degree of proof established by the evidence, and not what a petit jury not yet impaneled may possibly decide as to the probative force of the evidence.
71 Fla. at 240-41, 71 So. at 28. Although there is some dicta in the Arthur decision which can be read as suggesting a different, less onerous, burden (390 So.2d at 720), no appellate court has so interpreted that language. On the contrary, all of the appellate decisions since Arthur have continued to follow Russell and its progeny. Elderbroom v. Knowles, 621 So.2d 518 (Fla. 4th DCA 1993); State v. Perry, 605 So.2d 94 (Fla. 3d DCA), review denied, 613 So.2d 9 (Fla. 1992); Mininni v. Gillum, 477 So.2d 1013 (Fla. 2d DCA 1985). In Perry, the Third District expressly rejected such an interpretation, saying:
We do not view [the Arthur dicta] as overruling a long line of Florida Supreme Court decisions, not discussed or even involved in Arthur, which have consistently held that (1) "the degree of proof sufficient to deny an accused the right to bail in a capital [or life offense] case under our Constitution, to wit, proof that guilt is evident or the presumption of guilt is great is actually a greater degree of proof than that which is required to establish guilt merely to the exclusion of a reasonable doubt," State ex rel. Van Eeghen v. Williams, 87 So.2d 45, 46 (Fla. 1956) (following Russell v. State, 71 Fla. 236, 71 So. 27 (1916) and its progeny); and (2) where the state's evidence, although not insufficient to convict for a capital or life offense, is arguably impeached in substantial respects by other evidence or is rendered doubtful by substantial contradictions and discrepancies in the state's case, the proof is not stronger than beyond a reasonable doubt and, accordingly, the accused is entitled to pretrial bail as a matter of right for such offense. Russell v. State, 71 Fla. 236, 71 So. 27 (1916).
605 So.2d at 96-97.
The present case is one involving a death by stabbing. At the hearing on the motion for bail, it soon became apparent that the state's case against petitioner was based upon the theory that petitioner was a principal to first-degree felony murder. There was no suggestion, and certainly no evidence, that petitioner had been present when the crime was committed. The murder weapon had not been recovered.
*398 The state offered into evidence transcripts of three unsworn statements  two of which had been given by the person thought to have actually committed the crime (and who was a cousin of petitioner), and one of which had been given by that person's wife. The two statements of the person who allegedly actually committed the crime contain a number of internal inconsistencies. Moreover, it is clear from the statements that the alleged perpetrator had a serious drug problem, and that he had apparently been under the influence of drugs at the time of the crime.
In essence, according to the alleged perpetrator, the victim had been a drug dealer to whom the alleged perpetrator owed money for drugs. The alleged perpetrator and petitioner had discussed the possibility of the alleged perpetrator "ripping off" the victim's drugs, which the alleged perpetrator and petitioner would then share. Petitioner supposedly gave the alleged perpetrator his "knife in case something happened where [he] had to use it." However, they "never talked about killing [the victim]. Just taking his drugs." All the alleged perpetrator's wife had to add (in a statement which, likewise, contained a number of internal inconsistencies) was that petitioner had "told [her] that him and [her husband] was goin [sic] to do some business with [the victim], that he didn't know who was going to come out on top or not"; and that her husband had told her shortly after the crime had been committed "that he had [petitioner's] knife and that he had to give it back to him real quick before anything come up." Petitioner (who is seventeen) took the stand at the hearing, and denied under oath all of the material portions of the unsworn statements of the alleged perpetrator and his wife. He also testified that, on the day of the murder, he had been riding with the alleged perpetrator in the latter's truck. After he had gotten back to his home, he discovered that his knife was missing, and assumed that it had fallen out of his pocket while he was in the truck.
At the conclusion of the hearing, the trial court announced that the motion for bail would be denied, based exclusively upon the unsworn statements of the alleged perpetrator and his wife. In a written order entered the following day, based upon apparent misperceptions as to the tenor and intent of answers to specific questions contained in the unsworn statements, the trial court concluded that:
The testimony and evidence establish that the proof of guilt is evident or the presumption great that the defendant was a principal in the felony murder of the deceased by virtue of his knowledge of what was to occur, his intention to share in the proceeds of the robbery and his assistance in providing the murder weapon.
The analysis performed by the trial court in reaching this conclusion was whether, "[v]iewed in a light most favorable to the state, ... [t]he evidence [was] legally sufficient to sustain a verdict of guilty" of the offense charged.
The trial court's analysis was based upon the dicta from Arthur discussed earlier. However, as we have previously indicated, we agree with the district courts of appeal which have addressed the issue since Arthur and, in particular, with the Perry decision. In Arthur, the court did not intend to overrule without discussion the well-established law in Florida regarding the test to be applied by a trial court when asked to determine whether bail should be denied in a case such as this because "the proof of guilt is evident or the presumption is great." Because, prior to trial, an accused remains cloaked in the constitutional presumption of innocence and is, in addition, presumptively "entitled to pretrial release on reasonable conditions," the proper test is not that which determines whether the evidence is sufficient to overcome a motion for a directed verdict of acquittal at trial  whether the state has presented a prima facie case establishing guilt. Rather, the state is required to carry a greater burden. In essence, the state must establish that the accused's guilt is "evident"  that is, "`[m]anifest, plain, clear, obvious, conclusive[,]' ... `beyond question of doubt.'" Russell v. State, 71 Fla. 236, 240, 71 So. 27, 28 (1916). We are unable to discern how the unsworn statements offered by the state can possibly be viewed as satisfying this test. As the Third District said in Perry,

*399 "where the state's evidence, although not insufficient to convict for a capital or life offense, is arguably impeached in substantial respects by other evidence or is rendered doubtful by substantial contradictions and discrepancies in the state's case, the proof is not stronger than beyond a reasonable doubt and, accordingly, the accused is entitled to pretrial bail as a matter of right for such offense."
605 So.2d at 96-97.
We do not intend by this opinion to express any view regarding the guilt or innocence of petitioner  that will ultimately be the task of the jury selected to try the case. By this opinion, we hold only that the state failed to carry its burden, as delineated by well-settled law, to establish that "the proof of guilt is evident or the presumption is great" as to the charge against petitioner. Having failed to do so, petitioner is entitled to bail pending trial, pursuant to our constitution.
MOTION FOR REHEARING DENIED.
WOLF, J., concurs.
BENTON, J., concurs in result.