PER CURIAM.
Dallas Seymour (Petitioner) filed an emergency petition for writ of habeas corpus, asking this court to quash the trial court’s order denying him bond following an Arthur[1] hearing and to direct the trial court to set a reasonable bond. We grant the petition.
Petitioner was charged with (I) second degree murder and (II) possession of a firearm by a convicted felon. The first count alleges that Petitioner unlawfully killed Darryl Keith Hardnett (the victim) “by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life, although not necessarily with an intent to cause death,” by shooting the victim with a firearm. It also charged that he actually possessed and discharged the firearm and, as a result, inflicted death on the victim. Count I is punishable by life in prison. *302 §§ 782.04(2), 775.087(l)(a), (2)(a), Fla. Stat. (2012).
Petitioner moved to set bond and requested an Arthur hearing, asserting that because the evidence was consistent with an accidental shooting, which would support a verdict of not guilty, the state had not met its burden of showing “proof evident or presumption great.” See State v. Arthur, 390 So.2d 717, 720 (Fla.1980) (holding that release on bail pending trial for an accused charged with a capital offense or an offense punishable by life imprisonment cannot be denied absent a showing “that the proof of guilt is evident or the presumption is great”).
The trial court considered the state’s packet of documents, including witness statements and video surveillance. The evidence suggests that, at the time of the shooting, Petitioner, the landlord of what seems to be a rooming house, was among a gathering of tenants and friends who were watching television and drinking beer outside in the carport of the residence. He had given the victim something to smoke and the victim returned, asking for more. The group was talking and laughing, and Petitioner started playing with a small pistol, putting the clip in, taking it out, and pointing it at people. Petitioner went toward the TV and set the gun down while he looked for something in his pocket. Then he grabbed the gun, it went off, and one of the group was shot in the head; subsequently, he died. According to an eyewitness, Petitioner exclaimed, “Oh y’all I shot that man for real right there.” Another eyewitness explained there had been no argument and Petitioner had not aimed the gun; the shooting of the victim was a “pure accident.” There also was evidence Petitioner had a reputation of shooting off a small black pistol on celebrations like the Fourth of July.
Petitioner himself called 911, but not until after he was seen by another witness at a bus stop, and on two stores’ surveillance videotapes, running on nearby streets with a firearm. A detective retrieved a black Glock 19 semi-automatic 9mm firearm from a storm drain in the area where Petitioner had fled. It was free of debris, suggesting it had been discarded recently.
On questioning, Petitioner maintained he was in the house when he heard gunshots. He went outside, did not notice any injury to the victim (who remained seated where he was when shot), and went from 57th Avenue to Pembroke Road and back home — the same streets where he was seen running with the gun — looking for the shooter. When he got back, another resident showed him the victim was bleeding, and Petitioner called 911.
At the Arthur hearing, the defense argued that while the state’s evidence could support the charge of second degree murder, it also could support a charge not carrying a sentence of life in prison, such as manslaughter, culpable negligence, or not guilty as an accidental shooting. If the facts would support something other than a guilty verdict on the second degree murder charge then proof is not evident and the presumption is not great.
The trial court denied the motion to set bond. It indicated the state was required to present evidence which, in the light most favorable to the state, would be legally sufficient to sustain a jury verdict of guilt. See Arthur, 390 So.2d at 720. It also acknowledged the state is held to a higher standard of proof than beyond a reasonable doubt. See Elderbroom v. Knowles, 621 So.2d 518, 520 (Fla. 4th DCA 1993). Having considered the evidence and the parties’ arguments, the court found the state had met its burden and established the proof was evident and the *303 presumption great and the evidence presented would be sufficient to sustain a jury verdict of guilty. The trial court chose not to exercise its discretion to set bond. After the trial court denied Petitioner’s motion to reconsider denial of bond, Petitioner filed the instant petition.
Habeas corpus is the proper remedy to challenge incarceration due to denial of a request for bond. See id. at 521. Article I, section 14, of the Florida Constitution provides:
Unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great, every person charged with a crime ... shall be entitled to pretrial release on reasonable conditions. If no conditions of release can reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process, the accused may be detained.
Art. I, § 14, Fla. Const. (emphasis added); see also Fla. R. Crim. P. 3.131(a).
As noted above, the Florida Supreme Court has held that “when a person accused of a capital offense or an offense punishable by life imprisonment seeks release on bail, it is within the discretion of the court to grant or deny bail when the proof of guilt is evident or the presumption great[,]” and that “before the court can deny bail the state must have carried the burden of establishing that the proof of guilt is evident or the presumption great.” Arthur, 390 So.2d at 717. The burden is upon the state because the accused is presumed innocent while awaiting trial. Id. at 719-20.
Thus, for the trial court to deny Petitioner a bond for this reason, it was necessary for it to properly find the state met this stringent burden. We conclude it did not.
In Elderbroom, this court interpreted the state’s burden as follows:
Indeed, the state is held to a degree of proof greater than that required to establish guilt beyond a reasonable doubt. Furthermore, where the state’s evidence is arguably sufficient to convict, but is contradicted in material respects such that substantial questions of fact are raised as to the guilt or innocence of a defendant, then a trial court may properly find that the proof of guilt is not evident or the presumption of guilt is not great.
Elderbroom, 621 So.2d at 520 (citing State v. Perry, 605 So.2d 94 (Fla. 3d DCA 1992)); see also Hoskins v. Knowles, 757 So.2d 512 (Fla. 4th DCA 1998) (concluding the state failed to establish that the proof of guilt was evident or the presumption great, where the accused’s evidence substantially contradicted and impeached the state’s case); Kirkland v. Fortune, 661 So.2d 395, 397 (Fla. 1st DCA 1995) (“The degree of proof which the state must present to carry its burden in such a case has long been held to be a higher one than that of guilt to the exclusion of all reasonable doubt required for a criminal conviction.”).
In Elderbroom, there was evidence supporting both the state and the defense, and the trial court found the state had presented sufficient evidence to carry its burden and denied bond. However, the defendant had presented alibi evidence, challenged the victim’s description of the assailant, and showed that the victim had a motive to falsely accuse him. Under the circumstances, this court concluded that the trial court had erred in concluding the defendant was not entitled to pretrial release, granted the petition, and ordered the circuit court to release the defendant on bail *304 and conditions to be determined by the trial court.
In Kirkland, the defendant was charged with first degree murder as a principal; he was not present at the time of the crime. The state’s only evidence of the defendant’s involvement was three unsworn statements. Two of the statements came from the person who allegedly committed the stabbing, and these statements were inconsistent. The other came from that person’s wife, alleging that the defendant had told her that the defendant and the alleged perpetrator were going to do some business with the victim and he did not know who would come out on top, and the alleged perpetrator told her that he had the defendant’s knife. The seventeen-year-old defendant testified at the hearing and denied the material portions of the foregoing statements; he also stated that, on the day of the murder, he had been riding in the alleged perpetrator’s truck, later discovered his knife was missing, and assumed it fell out of his pocket. The trial court concluded the state had failed to carry its burden of establishing “that the accused’s guilt is ‘evident’ — that is, ‘[m]ani-fest, plain, clear, obvious, conclusive[,]’ ... ‘beyond question of doubt.’” Kirkland, 661 So.2d at 398 (quoting Russell v. State, 71 Fla. 236, 71 So. 27, 28 (1916)).
In Mininni v. Gillum, 477 So.2d 1013 (Fla. 2d DCA 1985), the defendant was charged with first degree murder. He was the manager of a club and employees had escorted out a customer, but they were unable to subdue him. The defendant went outside with a pistol and fired two warning shots, the customer continued his aggressive behavior, and the defendant fatally shot the customer. After he was indicted, the trial court revoked his bond and he sought habeas relief. Based on Arthur, the district court granted the petition, explaining,
It may well be that a jury could legitimately conclude that [the defendant] acted without justification and is, in fact, guilty as charged. On the other hand, the facts as presented to the circuit court are also susceptible of interpretations ranging from a lesser degree of murder down to excusable homicide. We simply cannot conclude that the state met the substantial burden of proof ....
Id. at 1015 (emphasis omitted).
Likewise, in this case, the evidence supports lesser degrees of homicide; witnesses who observed the shooting all perceived that Petitioner was surprised the victim was shot. Although the trial court’s order found the evidence would be sufficient to sustain a guilty verdict for second degree murder[2] as charged, that is not the proper test:
[T]he proper test is not that which determines whether the evidence is sufficient to overcome a motion for a directed verdict of acquittal at trial — whether the state has presented a prima facie *305 case establishing guilt. Rather, the state is required to carry a greater burden. In essence, the state must establish that the accused’s guilt is “evident” — that is, “ ‘[mjanifest, plain, clear, obvious, conclusive[,]’ ... ‘beyond question of doubt.’ ” [Russell 71 So. at 28].
Kirkland, 661 So.2d at 398.
The state has argued in its response that Petitioner’s attempt to discard the gun supports its position that the shooting was not an accident; however, if Petitioner did shoot the victim by accident, he still might have attempted to discard the gun immediately, knowing his status as a convicted felon precluded him from legally possessing one. § 790.23(l)(a), Fla. Stat. (2012).
We find the trial court abused its discretion in concluding the state met its stringent burden. Accordingly, we grant the petition and direct the trial court to release Petitioner on such bail and on such conditions as it may deem appropriate.

Petition Granted.

DAMOORGIAN, C.J., CIKLIN and FORST, JJ., concur.

. State v. Arthur, 390 So.2d 717, 718 (Fla. 1980).

. In Dorsey v. State, 74 So.3d 521, 524 (Fla. 4th DCA 2011), this court explained:
The crime of second degree murder is defined as the “unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual.” § 782.04, Fla. Stat. (2006). An act is imminently dangerous to another and evinces a "depraved mind” if it is an act or series of acts that: (1) a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another; (2) is done from ill will, hatred, spite or an evil intent; and (3) is of such a nature that the act itself indicates an indifference to human life. Wiley v. State, 60 So.3d 588, 591 (Fla. 4th DCA 2011); Fla. Std. Jury Instr. (Crim.) 7.4.